JPL:SCJ
F. #2025R00375

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
*    MARCH 23, 2026    *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

MURIELLE MISCZAK,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

I N D I C T M E N T

Cr. No. __26-CR-65__
(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1),
982(b)(1), 1343, 1956(a)(1)(B)(i),
1957(a), 1957(b), 1957(d)(1) and 3551 et
seq.; T. 21, U.S.C., § 853(p); T. 28,
U.S.C., § 2461(c))

Judge Nicholas G. Garaufis
Magistrate Judge Lara K. Eshkenazi

At all times relevant to this Indictment, unless otherwise indicated:

## INTRODUCTION

I.    The Defendant and Relevant Entities

      1.    The defendant MURIELLE MISCZAK was a citizen of Switzerland who maintained one or more residences in Brooklyn, New York.

      2.    Daycare-1, an entity the identity of which is known to the Grand Jury, was a private daycare and preschool located in Brooklyn, New York and founded in or about 2009. Daycare-1 generated revenue and funded its operations by charging and accepting tuition paid by parents to enroll their children in Daycare-1's various full-time, part-time, summer and afterschool programs.  The defendant MURIELLE MISCZAK was hired by Daycare-1 in or about 2013 as a Program Coordinator and continued in that role until approximately 2020 when MISCZAK became the Director of Daycare-1.  In her capacity as Director, MISCZAK had access to and control over certain of Daycare-1's financial accounts and systems including its accounting and bookkeeping systems which tracked tuition payments (the "Financial Systems"),

and was responsible for, among other things, overseeing Daycare-1's business operations and financial processes, supervising the staff, communicating with parents, coordinating payroll, and managing tuition billing and collection.

3.    Software Company-1, an entity the identity of which is known to the Grand Jury, was a cloud-based accounting software company with its corporate headquarters located in Toronto, Canada.  Daycare-1 used Software Company-1's platform and software to, among other things, generate tuition invoices for parents.

4.    Digital Platform-1, an entity the identity of which is known to the Grand Jury, was a global online payment system headquartered in San Jose, California that allowed individuals and businesses to send and receive money.

5.    Bank-1, an entity the identity of which is known to the Grand Jury, was a global financial institution headquartered in New York, New York.

6.    Bank-2, an entity the identity of which is known to the Grand Jury, was a global financial institution headquartered in in New York, New York.

II.    The Fraudulent Scheme

7.    In or about and between January 2022 and October 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MURIELLE MISCZAK engaged in a scheme to defraud Daycare-1 and parents and caregivers of children enrolled in Daycare-1 by misusing her access to and control of the company's Financial Systems to (a) steal, misappropriate and embezzle millions of dollars in tuition

payments for Daycare-1 and (b) conceal and further her fraudulent scheme, including by making false and fraudulent entries in and relating to the Financial Systems.

8.    In or by approximately 2020, it was the policy of Daycare-1, set by its owner and founder, that all tuition payments were to be deposited, either by check or electronic transfer, into Daycare-1's business bank account held at Bank-1 (the "Daycare Bank-1 Account"), which account was used to pay Daycare-1's expenses, including the monthly payroll. At times prior to 2020, Daycare-1 had accepted tuition payments by other methods which permitted the use of credit cards, but disallowed that payment method due to the associated fees.

9.    In or about January 2022, the defendant MURIELLE MISCZAK enabled parents to pay tuition through the Software Company-1 platform, which allowed the use of credit cards.  As a result, MISCZAK caused hundreds of tuition payments to be deposited into one or more of at least three business Digital Platform-1 accounts held in the name of Daycare-1 and subject to MISCZAK's control (the "Daycare Digital Accounts").  In or about and between January 2022 and October 2025, MISCZAK caused, in over 450 transactions, more than $2.8 million in tuition payments to be deposited into the Daycare Digital Accounts.  During this same time period, Digital Platform-1 charged and deducted more than approximately $89,000 in fees associated with the Daycare Digital Accounts.

10.    The defendant MURIELLE MISCZAK withheld from Daycare-1's owner and founder that tuition payments were being sent to the Daycare Digital Accounts, and MISCZAK did not transfer any of the funds from the Daycare Digital Accounts to the Daycare Bank-1 Account or otherwise use them to fund Daycare-1's operations.  Instead, MISCZAK transferred and caused the transfer of approximately $2.75 million from the Daycare Digital Accounts to one or more of at least two personal Digital Platform-1 accounts held in

MISCZAK's name (the "Misczak Digital Accounts") or to personal bank accounts held at Bank-1 and Bank-2 in MISCZAK's name, ultimately for her own personal use and benefit.

11. In furtherance of the scheme and in order to conceal the proceeds derived from it, the defendant MURIELLE MISCZAK took various steps to deceive and conceal her actions from Daycare-1 and those associated with it by, among other things: (a) manipulating one or more of the Financial Systems used to track tuition payments to falsely indicate that all the paid tuition had been deposited into the Daycare-1 Bank Account; (b) directing emails that were sent by Digital Platform-1 to Daycare-1 into a spam folder and then deleting those emails; (c) altering information in the Software Company-1 platform to disguise that tuition payments were being diverted into the Daycare Digital Accounts rather than being deposited into the Daycare-1 Bank Account; (d) withholding access to and information about the Daycare Digital Accounts from one or more of Daycare-1's staff members and employees; and (e) discouraging one or more of Daycare-1's staff members and employees from having direct communication with Daycare-1's owner and founder without MISCZAK.

12. In total, the defendant MURIELLE MISCZAK diverted at least approximately $2.75 million in tuition payments owed to and intended for Daycare-1 for her own personal use and benefit, including spending: (a) more than $650,000 on travel and entertainment, including over $350,000 on tickets for and entertainment associated with professional wrestling events; (b) more than $150,000 on ride sharing services; (c) more than $150,000 on food delivery services; and (d) hundreds of thousands of dollars on high-end luxury goods and other miscellaneous personal expenses. MISCZAK initiated many of these wire transactions from within the Eastern District of New York.

## COUNT ONE
(Wire Fraud)

13.    The allegations contained in paragraphs one through 12 are realleged and incorporated as if fully set forth in this paragraph.

14.    In or about and between January 2022 and October 2025, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MURIELLE MISCZAK did knowingly and intentionally devise a scheme and artifice to defraud Daycare-1 and parents and caregivers of children enrolled in Daycare-1, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: emails, wire transfers and other electronic payments and communications to and from the Eastern District of New York.

(Title 18, United States Code, Sections 1343 and 3551 et seq.)

## COUNTS TWO AND THREE
(Money Laundering)

15.    The allegations contained in paragraphs one through 12 are realleged and incorporated as if fully set forth in this paragraph.

16.    On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant MURIELLE MISCZAK did knowingly and intentionally conduct one or more financial transactions in and affecting interstate and foreign commerce, as set forth below, which transactions in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in such transactions represented the proceeds of some form of unlawful

6

activity and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of such specified unlawful activity:

| Count | Approx. Date | Description |
|---|---|---|
| TWO | 3/9/2023 | Wire transfer of approximately $15,000 from a MISCZAK account at Bank-2 ending x0525 to an account outside the United States |
| THREE | 8/29/2024 | Wire transfer of approximately $19,982.49 from a Daycare Digital Account ending x5005 to a Misczak Digital Account ending x1733 |

(Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 3551 et seq.)

COUNTS FOUR AND FIVE
(Engaging in Monetary Transactions in Criminally Derived Property)

19.    The allegations contained in paragraphs one through 12 are realleged and incorporated as if fully set forth in this paragraph.

20.    On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant MURIELLE MISCZAK did knowingly and intentionally engage and attempt to engage in monetary transactions in and affecting interstate commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, as follows:

| Count | Approx. Date | Description |
|---|---|---|
| FOUR | 5/23/2024 | Wire transfer of approximately $13,407.55 from a MISCZAK account at Bank-2 ending x0525 to a Misczak Digital Account ending x7825 to purchase professional wresting tickets |

7

| Count | Approx. Date | Description |
|-------|--------------|-------------|
| FIVE | 6/9/2025 | Wire transfer of approximately $13,434.80 from a MISCZAK account at Bank-1 ending x0746 to a Misczak Digital Account ending x1733 to purchase professional wresting tickets |

(Title 18, United States Code, Sections 1957(a), 1957(b), 1957(d)(1) and 3551 et seq.)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNT ONE

21.    The United States hereby gives notice to the defendant that, upon her conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

22.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

8

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS TWO THROUGH FIVE

23. The United States hereby gives notice to the defendant that, upon her conviction of any of the offenses charged in Counts Two through Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

24. If any of the above-described property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

9

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

s/
_____
FOREPERSON

By: *Whitman G.S. Knapp, AUSA*
JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK